IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| FRANK SMITH, | )   Case No. 21-CR-30003-DWD |
| WARREN GRIFFIN, | ) |
| ANTHONY DOBBINS, | ) |
| SEAN CLEMON, | ) |
| DOMINIQUE MAXWELL, | ) |
| PERRY HARRIS, and | ) |
| BARRY BOYCE, | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM & ORDER**

Before the Court is Defendant Smith's Motion to Suppress Statements ("Motion") (Doc. 442). The Government filed a Response in Opposition to the Motion (Doc. 540). The Court held a hearing on the Motion and is now prepared to rule. For the reasons explained below, the Motion is **DENIED**.

**I. Background**

A grand jury returned a 13-count indictment (Doc. 1) against Defendant and six co-Defendants. A 13-Count Superseding Indictment (Doc. 671) was later returned against Defendant and four Co-Defendants, alleging a racketeering conspiracy in violation of 18 U.S.C. § 1962(d) and 1963(a) (Count 1). (Doc. 671). Smith was also charged with murder in aid of racketeering under 18 U.S.C. § 1959(a)(1) and Section 2 (Count 2), use of a firearm during and in relation to a crime of violence under 18 U.S.C. § 924(c)(1)(A) and Section 2 (Counts 3, 6, 8, & 10), use of a firearm during and in relation to a crime of violence causing

death under 18 U.S.C. § 924(j)(1) and Section 2 (Count 4), and attempted murder in aid of racketeering under 18 U.S.C. § 1959(a)(5) and Section 2 (Counts 5, 7, & 9). (Doc. 671).

## A. Defendant's Motion

On January 25, 2021, two law enforcement officers recorded an interview, lasting approximately 19 minutes, with Defendant. The interview occurred after the arrest of Defendant and the return of the original indictment. Defendant argues he was subjected to several minutes of a custodial interrogation before he was advised of his *Miranda* rights, requiring the suppression of all statements made before that time. (Doc. 442, pg. 4).[1] The Government responds by arguing Defendant's pre-*Miranda* statements were not the product of an interrogation because he was not subjected to the sort of express questioning that would cause "a reasonable objective observer" to believe the officers' actions were reasonably likely to elicit an incriminating response. (Doc. 540, pgs. 1, 3-4).

## B. The Hearing on Defendant's Motion
## and the Recording of the Alleged Custodial Interrogation

On November 16, 2022, the Court held a hearing on the Motion, at which time a recording of the alleged custodial interrogation was admitted, by stipulation, as

---

[1] In the Motion, Defendant also argues the Court must suppress all post-*Miranda* statements referencing his criminal history, as such statements may be admissible only if Defendant testifies at trial. (Doc. 442, pg. 4). If Defendant testifies at trial, then Defendant requests that the Court preclude the Government from impeaching Defendant with statements referencing his prior convictions or, alternatively, that the Court make a pretrial determination on the admissibility of any prior conviction(s) under Federal Rule of Evidence 609. (Doc. 442, pg. 5). In response, the Government argues, if Defendant testifies at trial, then the post-*Miranda* statements about his criminal history are admissible under Rule 609. (Doc. 540, pgs. 1, 4). The Government suggests Defendant's prior convictions speak to his credibility. (Doc. 540, pg. 5). However, the Government stipulates it will "*not* introduce any statements that Smith made about his prior criminal history in its case-in-chief." (Doc. 540, pg. 4) (Emphasis in original.); (Tr. at Doc. 636, pgs. 108-09). Accordingly, consistent with the parties' representations at the hearing, the Court declines to address this issue before trial. (Tr. at Doc. 636, pgs. 107-09). The issue, if it arises, will be addressed during the trial.

Government's Exhibit 1. (Tr. at Doc. 636, pgs. 104-06). Government's Exhibit 1 was then manually filed with the Court. (Doc. 610). The parties stipulated to the facts in the recording and requested that the Court simply apply the law to those facts.[2] (Tr. at Doc. 636, pgs. 104-06). The recording is summarized below for purposes of this Motion.

Defendant entered the interview room with two law enforcement officers. (Government's Exhibit 1, 2:16). One of the officers indicated that he was going to advise Defendant of the charges against him, then the officers were going to chat with Defendant "real quick." (Government's Exhibit 1, 2:32). The officer used his cell phone to show Defendant the original indictment. (Government's Exhibit 1, 2:42). The officer, while looking at the indictment with Defendant, appeared to note Defendant's name and the charges. (Government's Exhibit 1, 2:42). Defendant continued to look at the officer's phone before stating, "racketeering?" The officer again noted Defendant's name, then the fact that the indictment contained ten counts. (Government's Exhibit 1, 3:07). The officer also noted the case number and district court. (Government's Exhibit 1, 3:17). Defendant stated, "the Southern District?" (Government's Exhibit 1, 3:22). Defendant indicated he was not sure where the Southern District is located. (Government's Exhibit 1, 3:24).

After Defendant was finished looking at the first officer's phone, the second officer indicated that they had a little information about the totality of the case. (Government's Exhibit 1, 3:30). Defendant interjected with a question about whether a conspiracy was charged in the indictment. (Government's Exhibit 1, 3:37). The first officer initially

---

[2] The Court also notes that the Government, in its Response to the Motion, stipulates to the accuracy of Defendant's summary of the recording. (Docs. 442, pgs. 2-3; Doc. 540, pg. 2).

indicated a conspiracy was not charged, but then corrected himself after reading the indictment aloud. (Government's Exhibit 1, 3:40 to 3:52). Defendant indicated that the first officer did not need to read the rest of the indictment aloud. (Government's Exhibit 1, 3:57). Defendant explained that he did not see the word "conspiracy" when reviewing the indictment on the officer's phone. (Government's Exhibit 1, 3:57). The first officer then used his phone to show Defendant the indictment again. (Government's Exhibit 1, 4:04).

Thereafter, the second officer again indicated that they knew a little about the case. (Government's Exhibit 1, 4:10). The officer indicated Defendant had the opportunity to talk to the officers, and that it would "mainly" be Defendant talking. (Government's Exhibit 1, 4:10). The officer stated, if Defendant wanted to take that opportunity, then the officer would have to advise Defendant of his rights in order to follow-up with any questions. (Government's Exhibit 1, 4:23). The officer asked Defendant whether that was something he wanted to do. (Government's Exhibit 1, 4:32 to 4:35). The officer stated it was completely Defendant's decision. (Government's Exhibit 1, 4:32 to 4:35). The officer also noted that the list of charges was substantial, held a lot of weight, and involved a lot of time. (Government's Exhibit 1, 4:32 to 4:35). In response, Defendant indicated that he does not have firearms. (Government's Exhibit 1, 4:46). The officer again asked Defendant whether he wanted to speak about anything. (Government's Exhibit 1, 4:46). Defendant responded by stating he does not know anything about "that stuff," except what constitutes a racketeering and conspiracy charge. (Government's Exhibit 1, 4:58 to 5:09). Defendant emphasized that he did not know what the other stuff was, or even where the

Southern District is located. (Government's Exhibit 1, 4:58 to 5:09). The second officer then proceeded to advise Defendant of his rights. (Government's Exhibit 1, 5:10).

## II. Analysis

Initially, the Court notes that the parties do not disagree that the recording depicts Defendant in the custody of law enforcement. (Docs. 442, pg. 4; 540, pgs. 2-3); (Tr. at Doc. 636, pgs. 106-08). Accordingly, the only question presented to the Court is whether Defendant was subjected to an interrogation. Under *Miranda*, a suspect who is subjected to a custodial interrogation by law enforcement must be notified of the right to counsel and the right against self-incrimination. *See U.S. v. Hendrix*, 509 F.3d 362, 373 (7th Cir. 2007). However, not every statement by a defendant in custody is the product of an interrogation. *See id*. at 374 (citing *Rhode Island v. Innis*, 446 U.S. 291, 299 (1980)); *accord U.S. v. Swanson*, 635 F.3d 995, 1002 (7th Cir. 2011). In the context of *Miranda*, an interrogation is express questioning and words or actions by the police, aside from those normally attendant to an arrest and custody, that the police should know are reasonably likely to elicit an incriminating response. *See Hendrix*, 509 F.3d at 374 (citing *Innis*, 446 U.S. at 300-01; *U.S. v. Abdulla*, 294 F.3d 830, 834 (7th Cir. 2002)). The test is whether a reasonable objective observer would have believed the statements of the police were reasonably likely to elicit an incriminating response. *See id*. (citing *Abdulla*, 294 F.3d at 834; *U.S. v. Westbrook*, 125 F.3d 996, 1002 (7th Cir. 1997)); *accord U.S. v. Robinson*, 586 F.3d 540, 546 (7th Cir. 2009).

A police officer's response to a suspect's direct inquiry, for example, is not an interrogation. *See Hendrix*, 509 F.3d at 374 (citing *U.S. v. Briggs*, 273 F.3d 737, 740 (7th Cir.

2001)). Likewise, a suspect's voluntary statements are not subject to *Miranda* warnings and are admissible as evidence. *See id*. (citing *Miranda v. Arizona*, 384 U.S. 436, 478 (1966)); *accord Swanson*, 635 F.3d at 1001-02. Statements are volunteered by a suspect when they "are not the result of 'compelling influences, psychological ploys, or direct questioning.' [Citations]." *See Hendrix*, 509 F.3d at 374 (quoting *Arizona v. Mauro*, 481 U.S. 520, 529 (1987); *U.S. v. Jackson*, 189 F.3d 502, 510 (7th Cir. 1999)).

Finally, the Seventh Circuit has "held that merely reciting the evidence against a suspect is not the functional equivalent of an interrogation." *See U.S. v. Johnson*, 680 F.3d 966, 977-78 (7th Cir. 2012) (finding an officer's actions did not constitute an interrogation, where the officer read a search warrant to the defendant as he sat in a police car outside the residence in question and then the defendant, in the absence of evidence indicating the search warrant would prompt a confession, voluntarily "declared that everything in the apartment was his"), *rev'd on unrelated grounds*, *Fowler v. Butts*, 829 F.3d 788 (7th Cir. 2016); *U.S. v. Vallar*, 635 F.3d 271, 285 (7th Cir. 2011) (finding "[m]erely apprising Vallar of the evidence against him by playing tapes implicating him in the conspiracy did not constitute interrogation" and, in any event, "Vallar made no statement in response to the tapes before he received and waived his *Miranda* rights"); *Easley v. Frey*, 433 F.3d 969, 974 (7th Cir. 2006) (finding a statement regarding the evidence and possible consequences of charges was not an interrogation, as the petitioner did "not suggest[]…[the] statement was anything more than a matter-of-fact communication of the evidence against him and the potential punishment he faced"); *Enoch v. Gramley*, 70 F.3d 1490, 1500 (7th Cir. 1995) (finding the petitioner's incriminating statements to police, after the police identified the

victim and briefly recited the evidence against him, was not the functional equivalent of an interrogation); *U.S. v. Sutton*, 77 Fed. Appx. 892, 895 (7th Cir. 2003) (finding the statements of the defendant, while in his house and walking to a police car, were not the result of an interrogation, where the officer merely stated marijuana and a gun were found on the property and the defendant volunteered that "the drugs were his and not his sons"). Indeed, providing information to a suspect may be helpful because the information about the evidence may contribute to an intelligent exercise of judgment when charting a future course of conduct. *See Johnson*, 680 F.3d at 977-78 (quoting *Easley*, 433 F.3d at 974). While the weight of the information might cause the suspect to speak, the mere provision of information does not amount to an impermissible "psychological ploy." *See id.* (quoting *Easley*, 433 F.3d at 974); *see also Hendrix*, 509 F.3d at 374.

Here, the Court **FINDS** Defendant's pre-*Miranda* statements were not the product of an interrogation. *See Hendrix*, 509 F.3d at 373. Simply put, a reasonable objective observer would not believe the officers' actions or statements were reasonably likely to elicit an incriminating response. *See Hendrix*, 509 F.3d 374; *Robinson*, 586 F.3d at 546. Instead, the officers' actions and statements were akin to those discussed in *Johnson* and *Vallar*. *See Johnson*, 680 F.3d at 977-78; *Vallar*, 635 F.3d at 285. The Court is of the opinion that the reading of an indictment, like the recitation of evidence or the reading of a search warrant, is not the functional equivalent of an interrogation. *See id*.

Further, the second officer indicated Defendant had an "opportunity" to voluntarily speak about the case. (Government's Exhibit 1, 4:10, 4:23). However, in almost the same breath, the second officer advised Defendant that follow-up questioning would

have to be preceded by a reading of his rights. (Government's Exhibit 1, 4:23). Finally, while the officers noted the charges were substantial, held a lot of weight, and involved a lot of time, the Court is unpersuaded that those bare statements alone transformed the exchange into an interrogation. (Government's Exhibit 1, 4:32 to 4:35). Those isolated statements represented "matter of fact communication[s]" about the consequences and punishment potentially faced by Defendant due to the indictment. *See Easley*, 433 F.3d at 974. The sobering nature of those statements, upon which the officers did not elaborate to pressure Defendant, alerted Defendant to the need to intelligently exercise judgment but were otherwise insufficient to result in an interrogation. *See Johnson*, 680 F.3d at 977-78; *Hendrix*, 509 F.3d at 373.

### III. Conclusion

For the foregoing reasons, the Motion is **DENIED**.

**SO ORDERED.**

Dated: January 3, 2023

DAVID W. DUGAN
United States District Judge